IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

FRITZEN V. FRITZEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TERRY FRITZEN, APPELLANT,

V.

LAVERN FRITZEN ET AL., APPELLEES.

TERRY FRITZEN, INDIVIDUALLY AND ON BEHALF OF
FRITZEN TRUCKING, INC., APPELLANT,

V.

LAVERN FRITZEN, APPELLEE.

Filed April 7, 2020.    Nos. A-19-416, A-19-417.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Reversed and remanded for further proceedings.

Daniel E. Klaus, of Rembolt Ludtke, L.L.P., for appellant.

Tony J. Brock, of Brock Law Offices, P.C., L.L.O., for appellees.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Terry Fritzen (Terry) was a minority shareholder and employee of Fritzen Trucking, Inc., and his father, LaVern Fritzen (LaVern), was its majority shareholder. Terry sued LaVern and two Fritzen Trucking employees for their alleged defamatory remarks to others that Terry had improperly taken money from Fritzen Trucking. In a separate action filed the same day, Terry,

- 1 -

individually and on behalf of Fritzen Trucking, sued LaVern for an accounting of Fritzen Trucking's assets, claiming that LaVern and/or employees allegedly mishandled assets. Terry sought a judgment against LaVern for the value of any mishandled assets; LaVern counterclaimed that Terry misappropriated corporate funds.

The Gage County District Court ultimately dismissed each case for want of prosecution and an absence of good cause. Terry appeals the dismissal of each case, and we have consolidated for disposition the appeals filed in cases Nos. A-19-416 and A-19-417. We reverse and remand both cases for further proceedings.

## II. BACKGROUND

### 1. PRELIMINARY PROCEDURAL HISTORY OF CASE NO. A-19-416

On October 1, 2012, Terry filed a complaint in the Gage County District Court (case No. CI 12-430) against LaVern and two Fritzen Trucking employees, Jodi Adams and Kris McAllister, asserting that they had made defamatory statements that he had improperly taken money from Fritzen Trucking. Terry allegedly suffered damages as a result. In March 2013, the defendants filed a joint answer, denying the material allegations of the complaint and asking that it be dismissed with prejudice.

Three years later, on March 25, 2016, the defendants filed a motion to dismiss Terry's complaint with prejudice. They asserted the district court had "ordered [Terry] to show cause why the pending action should not be dismissed for want of prosecution," and the defendants had "not been served with any response" from Terry concerning the order (order not in our record). Nor had Terry served any written discovery upon defendants' counsel, although in September 2015, defendants gave a list of several dates in response to Terry's counsel's request for the defendants' counsel's availability for depositions. The motion to dismiss was set for a May 2016 hearing; there is no disposition of that motion in our record.

On January 31, 2017, the district court made a journal entry stating that a telephonic status hearing took place on January 19. The court ordered all discovery to be completed by May 1, with a pretrial conference to be held on May 22, and a 5-day jury trial to begin on June 26. A pretrial conference was held on May 22. According to the "Judges Notes" filed the next day, the jury trial (now with 2 days allotted) was continued to August 23. Per the "Judges Notes" filed on June 13, the court continued trial until further order. We discuss the rest of the procedural history of case No. A-19-416 after we discuss preliminary filings that are unique to case No. A-19-417.

### 2. PRELIMINARY PROCEDURAL HISTORY OF CASE NO. A-19-417

Also on October 1, 2012, Terry (individually and on behalf of Fritzen Trucking) sued LaVern in a separate action filed in the Gage County District Court (case No. CI 12-431). Terry alleged that sometime around September 2011, LaVern "removed" him from the offices of Fritzen Trucking. Thereafter, Terry had been "denied access to the corporate records" and "effectively removed as an officer and director." Terry stated that he was still a minority shareholder of Fritzen Trucking. He believed Fritzen Trucking's assets had been mishandled by LaVern and/or its employees. Among other things, Terry asked that LaVern be ordered to account for those assets,

and if any assets were found to be mishandled, that judgment be entered against LaVern for the value of such assets.

On November 16, 2012, LaVern filed an answer, denying the material allegations within Terry's complaint and asserting a number of affirmative defenses. LaVern asked that the complaint be dismissed with prejudice. On December 15, 2014, LaVern submitted a "FIRST AMENDED ANSWER and COUNTERCLAIM." The amended answer included several new affirmative defenses regarding Terry's spending of Fritzen Trucking funds on personal things resulting in a waste of corporate assets. LaVern asked that the complaint be dismissed at Terry's costs. In LaVern's counterclaim, for which LaVern sought judgment in his favor and recovery of damages, he alleged that in September 2011, on or about the same date Terry was removed from the offices of Fritzen Trucking, Terry hit or struck LaVern (then over 75 years old) in the chest, knocking him down onto an office couch. On January 9, 2015, Terry filed a reply to the counterclaim, generally denying its material allegations and requesting judgment in his favor upon the counterclaim.

On August 22, 2016, LaVern submitted a "SECOND AMENDED ANSWER and COUNTERCLAIM," substantially similar to his first amended answer and counterclaim, yet with two additional matters raised in his counterclaim: misapplication of corporate funds for personal use in breach of a fiduciary duty to Fritzen Trucking, and failure to repay debt incurred by Fritzen Trucking by loaning Terry sums of money to pay medical expenses and attorney fees in unrelated litigation. LaVern sought various monetary damages and the same or similar relief sought under his prior pleadings. LaVern did not object to Terry's "request for an accounting and professional, thorough audit to be done by a neutral, certified public accountant at [Terry's] expense." On August 24, Terry filed a motion to dismiss LaVern's counterclaim with prejudice on grounds that it failed to state a claim upon which relief could be granted. An order filed on September 30 states that Terry's motion to dismiss was addressed at a hearing on September 26 and taken under advisement; the disposition of that motion is not contained in our record. The parties were ordered to participate in mediation.

A journal entry filed on January 31, 2017, shows there was a status hearing on January 19. Like the order in case No. A-19-416, the district court ordered all discovery to be completed by May 1, set a pretrial conference for May 22, and scheduled a 5-day jury trial to begin on June 26. A pretrial conference took place on May 22 (same day of a pretrial conference in case No. A-19-416). As stated in the "Judges Notes" filed the next day, trial remained set for June 26, but on advisement of counsel, was to be a bench trial rather than a jury trial.

The "Judges' Notes" filed on June 13, 2017, indicate that a status hearing took place at the court's request on June 12. The district court ordered an "expert witness should be appointed" pursuant to Neb. Rev. Stat. § 27-706 (Reissue 2016) (judge may on own motion appoint expert witness), specifically an "accountant" who could "provide an accounting" to the court. The parties were given until June 26 to provide an agreed-upon expert's name to the court. Trial was continued until further order. On July 28, the district court entered an order indicating that the parties agreed upon a certain "CPA" to be the expert witness accountant; the court appointed the individual as an expert witness. The parties were instructed to submit a stipulation by August 18 "outlining the duties of the expert witness" and stating the compensation required for completion of that work; both parties and the expert witness were to sign the stipulation. A stipulation was filed on August

25; it contained the requested information, except for the signature of the expert witness. On August 31, the parties filed a stipulation bearing the same content as well as the expert witness' signature. The content of the stipulation is discussed in our analysis where relevant.

### 3. SHARED PROCEDURAL HISTORIES OF CASES NOS. A-19-416 AND A-19-417

Beginning in July 2018, the procedural history in both cases essentially mirrored each other, so we discuss them together here.

#### (a) July 2018 Orders to Show Cause

In case No. A-19-416, on July 17, 2018, the district court entered an order that Terry's complaint would be dismissed on August 17 unless prior to that date either party showed good cause in writing why the action should not be dismissed. The record of case No. A-19-417 indicates a similar order was entered the same day concerning potential dismissal of case No. A-19-417, but the actual order is not in our record. On August 15, in both cases, Terry's counsel filed affidavits that were substantially identical responses to the orders to show cause. Terry's counsel stated that documents and information had been submitted to the expert witness, with whom the parties were scheduled to meet on September 17 and 18 to present their positions with respect to financial issues in each case. The expert witness would then prepare a report to submit to the court. Terry's counsel anticipated that upon completion of the expert report, case No. A-19-416 would be set for trial and Terry would be prepared to "either file a dispositive motion or set [case No. A-19-417] for trial." Terry's counsel asked the court to find good cause had been shown to not dismiss either case. On August 17, the district court found that good cause had been shown in each case and that each was to remain on the active docket.

#### (b) February 2019 Orders to Show Cause

On February 26, 2019, the district court issued an "Order to Show Cause and Order for Pretrial Conference" in cases Nos. A-19-416 and A-19-417. The orders indicated that a hearing would take place on March 25 for counsel to show the court why the proceedings should not be dismissed for want of prosecution. The order also indicated that if good cause was shown, the court would proceed to a pretrial conference. Terry's counsel filed affidavits in each case in response to the pending orders to show cause. In each, Terry's counsel stated that the parties had a hearing with the expert "court appointed accountant" who "issued a report in January, 2019." However, Terry had "identified certain issues that were not addressed by [the expert witness] before her final report [was] prepared." The expert witness, a "practicing accountant," was unable to address them until after "April 15, 2019 when individual taxes must be filed." The cases would be ready for trial upon "final completion" of the expert witness report.

#### (c) March 2019 Hearing and Subsequent Actions

At the hearing on March 25, 2019, the district court expressed frustration with the progression of cases Nos. A-19-416 and A-19-417. Following argument from the parties, the district court took the pending orders to show cause under advisement. In the event case No. A-19-417 was to remain on the docket, the district court set the matter (as agreed upon by the parties during the hearing) for a 4-day jury trial in August 2019. The "pretrial conference" in case

No. A-19-416 was continued pending results of any trial in case No. A-19-417 or the decision on the orders to show cause.

On April 2, 2019, the district court issued separate, but substantively identical orders in cases Nos. A-19-416 and A-19-417. The district court found that each case had individually been on file for 2,366 days as of March 25 (hearing date), which "significantly and grossly" exceeded the Nebraska Supreme Court's case progression standard of 18 months for disposition of 98 percent of civil matters. The district court did not find good cause had been shown for continuing either case on the active docket; the action in both cases (i.e., "Complaint" in case No. A-19-416; "Complaint and Counterclaim" in case No. A-19-417) were dismissed without prejudice, "for lack of prosecution and an absence of good cause." Each party was to pay their own costs associated with each action.

Terry appealed from each April 2, 2019, order. The two appeals were consolidated for disposition in this court.

## III. ASSIGNMENTS OF ERROR

In both appeals, Terry claims the district court erred by dismissing his actions for lack of prosecution and an absence of good cause.

## IV. STANDARD OF REVIEW

Dismissal of a civil action for lack of prosecution is addressed to the discretion of a trial court, whose ruling, in the absence of an abuse of discretion, will be upheld on appeal. *Jones v. Jones*, 284 Neb. 361, 821 N.W.2d 211 (2012).

## V. ANALYSIS

### 1. APPLICABLE LAW

A district court has discretionary power to dismiss a case for want of prosecution and such dismissal is also within the inherent power of the court. See *Jones v. Jones, supra*. See, also, Neb. Rev. Stat. § 25-1149 (Cum. Supp. 2018) (trial court "may provide for dismissing actions without prejudice for want of prosecution"). The power to dismiss for want of prosecution is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the trial courts. See *Jones v. Jones, supra*. Assurance of quality in judicial process is as important as speedy disposition. *Talkington v. Womens Servs.*, 256 Neb. 2, 588 N.W.2d 790 (1999).

The plaintiff bears the responsibility to prosecute a case with reasonable diligence. *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015). In the absence of a showing of good cause, a litigant's failure to prosecute a civil action, resulting in noncompliance with the Nebraska Supreme Court's progression standards for civil actions in district courts, is a basis to dismiss an action on account of a lack of diligent prosecution. *Id*. According to progression standards for civil actions in district courts, most of those actions (98 percent) should be disposed of within 18 months. Neb. Ct. R. § 6-101(A) (rev. 2013) (as relevant here, age of case is measured from time of filing to date case is dismissed; not included in age count is time case is out of control of trial judge, such as when parties are pursuing court required mediation).

Important considerations in determining whether to dismiss a case for lack of prosecution include whether a new suit is barred by the statute of limitations, the length of the delay, excuses for the delay, and whether previous dismissals for want of prosecution have been entered. See *Schaeffer v. Hunter*, 200 Neb. 221, 263 N.W.2d 102 (1978). The fact that a new suit would be barred by the statute of limitations is an important consideration, but in and of itself does not demonstrate that there has been an abuse of discretion by dismissing a case for failure to prosecute. See *id*. Each case must be looked at with regard to its own peculiar procedural history, and the situation at the time of the dismissal. *Id*. See, also, *Jones v. Jones, supra* (inquiry of whether to dismiss case for lack of prosecution is not one regarding predictions about future events; district court abused its discretion by dismissing complaint for lack of prosecution when plaintiff complied with alternative given in notice of intent to dismiss for lack of prosecution).

Whether a delay is unexplained or attributable entirely to the plaintiff are relevant inquiries in determining whether to dismiss a case for lack of prosecution. See *Billups v. Jade, Inc.*, 240 Neb. 494, 482 N.W.2d 269 (1992) (affirming dismissal of action; plaintiff's answers to interrogatories served on defendants far past discovery deadline was inexplicable and case was past recommended case progression standard). But see *Omaha Nat. Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982) (from 1976-1981, parties submitted various pleadings and discussed settlement in quiet title action; dismissal of action not justified as failure to prosecute it, at least in later stages, was due to extended effort to end litigation by enforcing alleged settlement agreement and record did not establish delay was entirely due to plaintiffs alone).

Another factor to consider is whether the plaintiff is ready and willing to proceed to trial at the time of the pending dismissal decision. See *Gutchewsky v. Ready Mixed Concrete Co.*, 219 Neb. 803, 366 N.W.2d 751 (1985) (upholding action reinstatement; plaintiff's evidence of discovery progress showed only step that remained before setting case for trial was obtaining expert witness and statute of limitations barred refiling case).

Further, a delay in litigation may be justified where it is due to the parties waiting for a decision in a different case or where case progression is stayed pending resolution of a related case. See *State ex rel. Johnson v. Board of Supervisors of Gage County*, 203 Neb. 764, 280 N.W.2d 636 (1979) (affirming dismissal of 4-year case; record refuted relators' alleged reasons for delay and nothing in evidence showed parties were awaiting decision in different case, but even if so, Supreme Court decided other case 1 year prior to filing of motion to dismiss in case on appeal).

Keeping these legal principles in mind, we now address the circumstances of the cases on appeal here.

### 2. CIRCUMSTANCES OF CASES NOS. A-19-416 AND A-19-417

Both cases were filed on October 1, 2012, and both were dismissed on April 2, 2019. The age of case No. A-19-416 is well beyond the recommended 18-month case progression standard. See Neb. Ct. R. § 6-101(A). The same goes for the age of case No. A-19-417 (even disregarding the 4 months between the order to mediate and the following order setting a trial date). Notwithstanding noncompliance with the case progression standard, a showing of good cause would have justified barring dismissal of the cases for want of prosecution. See *Marcuzzo v. Bank of the West, supra*.

## (a) Did Good Cause Exist in Case No. A-19-416?

In case No. A-19-416, the defendants filed their answer in March 2013, about 6 months after Terry filed his complaint. A 3-year hiatus in litigation followed until March 2016, when the defendants filed a motion to dismiss the complaint, apparently because Terry had not responded to an order to show cause. Our record neither contains such an order filed that year, nor a ruling on that motion. We note that in the other case, LaVern filed an amended pleading to which Terry responded during the 3-year inactive period in case No. A-19-416. Regardless, as of January 2017, case No. A-19-416 was set for trial in June. After a pretrial conference on May 22, trial was continued to August. On June 13, trial was continued by the district court until further order. That same day, trial was also continued in case No. A-19-417 due to the district court's decision to order the appointment of an expert witness. Therefore, as of June 2017, it is evident that case No. A-19-416 was placed on hold pending resolution of matters in case No. A-19-417.

In fact, during the March 2019 hearing, the defendants' counsel said it "makes more sense to try [case No. A-19-417] first and then [case No. A-19-416]. Because the results of [case No. A-19-416] may depend on the result of [case No. A-19-417]." Terry's counsel agreed "one [action]" could "perhaps" dictate the other but was "not sure" that they could not be tried at the same time. However, Terry's counsel did not disagree with trying case No. A-19-417 before case No. A-19-416. The district court thought a "conversation" about that had already happened. The court said "I think we did, maybe, decide at one point [the cases] were going to be bifurcated." The court thus further continued case No. A-19-416 (pending result of any trial in case No. A-19-417) and set case No. A-19-417 for trial in August 2019; those orders were subject to the then-pending orders to show cause regarding dismissal of the cases.

While there is no clear explanation in the record for the lengthy periods of inactivity at the beginning of the case, the record does establish that that parties were ready to proceed with trial as early as January 2017 but then the action was twice continued. The delay in progression of case No. A-19-416 thereafter was largely explainable (i.e., awaiting expert report and trial in case No. A-19-417) and cannot be said to have been attributable solely to Terry. See, *Omaha Nat. Bank v. Mullenax, supra* (dismissal of action not justified; failure to prosecute 6-year action, at least in later stages, was not unexplainable or entirely due to plaintiffs alone); *State ex rel. Johnson v. Board of Supervisors of Gage County, supra* (implying that waiting for decision in related case may be sufficient reason for delay in prosecution of civil action). Additionally, Terry would be precluded from refiling his now outdated defamation claim. See Neb. Rev. Stat. § 25-208 (Reissue 2016) (1-year statute of limitations for libel or slander action).

The record supports that there was good cause for the delay in prosecution in case No. A-19-416 based upon the district court's decision to appoint an accounting expert in case No. A-19-417 and the general understanding that case No. A-19-417 should be tried first. Therefore, resolution of the appeal in case No. A-19-416 turns whether there was good cause in case No. A-19-417 to avoid dismissal based on lack of prosecution, which we address next.

## (b) Did Good Cause Exist in Case No. A-19-417?

In case No. A-19-417, LaVern filed an answer about 1 month after Terry filed his complaint in October 2012. Over 2 years passed before LaVern filed his first amended answer and

counterclaim; Terry filed a responsive pleading within a month thereafter. Then, about 1½ years later, in August 2016, LaVern filed a second amended answer which included additional matters raised in his counterclaim (i.e., misapplication of corporate funds for personal use; failure to repay debt incurred by Fritzen Trucking for personal loans). Terry quickly moved to dismiss the newly asserted counterclaim. In September, the parties were ordered to mediate; an inactive period of about 4 months followed. Up to that point, the slow case progress could be attributed in part to LaVern's amended pleadings and Terry's responsive filings, tending to support a showing of good cause for some of the initial delays in the case.

Further, in January 2017, the matter was set for a June jury trial. After the May pretrial conference, trial remained set for June. From what we can tell, no continuances were requested by the parties. However, on June 13, trial was continued when the district court decided to order the appointment of an accountant as an expert witness. By July 28, the parties had agreed upon a "CPA" to fulfill that role; the agreed-upon individual was appointed. At the court's request, the parties and expert witness filed a stipulation in August containing a plan that would culminate in the expert witness issuing a report. The stipulation provided that *both parties* would submit to the expert witness the relevant books and records of Fritzen Trucking; after the expert witness had the opportunity to review those materials, *both parties and the expert witness* would agree on a "date, time, and location" to meet, likely for 1 day. *Each party* was responsible for specifically identifying the "transactions or occurrences" that were at issue. During the meeting, each party would present materials necessary to identify and describe the respective transaction or occurrence in question. Thereafter, the expert witness would review the documents and testimony presented in light of the corporate books and records and would issue a report with respect to the identified transactions and occurrences. The expert witness could ask for more information or documents from either party (via written request or in-person meeting with the parties) if the expert had additional questions about a transaction or occurrence.

In August 2018, Terry's counsel submitted an affidavit in response to an order to show cause. The affidavit informed the district court that documents and information had at that time already been submitted to the expert witness and the parties were scheduled to meet with the expert on September 17 and 18, after which the expert would prepare and submit a report. Finding good cause at that point in time, the court kept the case (and case No. A-19-416) on the active docket.

However, on February 26, 2019, an order to show cause and order for pretrial conference was filed. In a responsive affidavit filed in March, Terry's counsel claimed that "the parties participated in a hearing" with the expert, and the expert issued a report in January. However, Terry had identified certain issues that were not addressed in the report, and because the expert was a "practicing accountant," the expert could not address those issues until after April 15 (conclusion of tax season).

During a March 25, 2019, hearing, Terry's counsel stated the expert witness "finally was available" in September 2018; the January 2019 report was "preliminary" and the accountant would not be able to address "anything additional until after tax season"; and "there were some questions from [the expert] about the evidence that was presented and what [the expert] concluded with respect to it" which may or may not have been addressed in the report. Terry's counsel said there needed to be a meeting to go over the report with the expert witness to understand what was

considered and what was not so that the expert could then make a final report. The defendants' counsel acknowledged that the expert witness' report was not received until that January.

At the March 25, 2019, hearing, the district court recalled "*the parties* wanted to try all of these financial issues" and "wanted" the court to "go through stacks and stacks and stacks of documents and come up with a resolution." (Emphasis supplied.) The district court said it decided to appoint the expert witness, who had "two years to go through this and still need[ed] more time." Terry's counsel responded that the expert witness was presented with all of the evidence needed to make a report in September 2018; then the parties waited until January 28, 2019, for the report. In the report, the expert witness "invited questions" about the report but indicated the expert was not available until after tax season. Terry's counsel believed Terry needed an opportunity to present the questions he had for the expert witness and if the expert had all of the answers, then the report would become final.

Despite the above-noted explanations, the district court nevertheless concluded good cause had not been shown even though a reasonable explanation regarding the expert witness had been provided and the delay in progression of the case was certainly not attributable mostly or entirely to Terry. See, *Billups v. Jade, Inc.*, 240 Neb. 494, 482 N.W.2d 269 (1992) (unexplainable delay attributable entirely to plaintiff cuts against showing of good cause); *Omaha Nat. Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982) (dismissal of action not justified; failure to prosecute 6-year action, at least in later stages, was not unexplainable or entirely due to plaintiffs alone).

The record shows the parties were ready to proceed with trial as early as January 2017, but the scheduled summer trial date was subsequently delayed as a result of the district court's decision to appoint an expert witness to review the documents and transactions at issue in the case (case No. A-19-417). Terry correctly argues that the "obligations" regarding selection of and coordination with the expert witness accountant were "imposed on both parties." Reply brief of appellant at 4 (case No. A-19-417). The parties and the expert witness all had a role in the expert witness finalizing a sufficient report. Terry contends the district court "retroactively imposed" an "undefined time period" for the expert witness to complete the necessary work. *Id*. We note that there were no specific deadlines set forth in the stipulation regarding the duties of the expert witness, and the record does not contain an order setting a deadline by which the expert witness was to finish the requested report. A preliminary report was not submitted to the parties until January 2019. The report could not be finalized, however, because the expert was now in the midst of tax season and could not address any questions about the report until after April 15. This was certainly a circumstance beyond the control of either party.

Further, during the March 25, 2019, hearing, Terry's counsel asserted that Terry was prepared to set the "matter" for trial "now." Neither party objected to the August trial date set in case No. A-19-417; the record shows that an order was issued on March 25 setting trial accordingly. The record also shows that the only remaining task before trial was for the accounting expert to finalize the report, apparently after the parties had a chance to conduct a final review of the report with the expert. Although the expert could not meet with the parties until after April 15, this was less than 1 month away at the time of the March hearing. The parties had only received the report the latter part of January, but neither party objected to proceeding to trial as scheduled

in August. Therefore, the record shows the parties were ready to proceed to trial around the time the decision to dismiss the case was pending, which is another factor that weighs against finding the dismissal of the case was justified. See *Gutchewsky v. Ready Mixed Concrete Co.*, 219 Neb. 803, 366 N.W.2d 751 (1985). Also, Terry would now be barred from refiling his claims for an accounting of corporate assets. See, Neb. Rev. Stat. § 25-207 (Reissue 2016); *Fraser v. Temple*, 173 Neb. 367, 113 N.W.2d 319 (1962) (equity action for accounting is subject to 4-year statute of limitations that accrues when plaintiff has right to maintain and institute suit).

As we explain next, we conclude the district court abused its discretion by finding good cause had not been shown at the time of the March 2019 hearing.

### 3. DISTRICT COURT ABUSED ITS DISCRETION BY DISMISSING EACH CASE

Although the cases have clearly been pending for a long time, they were scheduled for trial in the summer of 2017. Trial was delayed, however, as a result of the district court's decision to appoint an expert witness in case No. A-19-417. The district court wanted an expert accountant to review the documents and transactions at issue in the case. That expert was agreed upon by the parties in August 2017. It is unclear what caused the 1-year delay in getting to the September 2018 meeting between the parties and the expert. That delay could have been caused by either or both parties not timely getting documents delivered to the expert, or the accountant not timely reviewing the necessary documents, or both, or possibly some other unknown reason. Regardless, the district court was satisfied in August 2018 that the upcoming meeting with the expert in September and the pending expert report constituted good cause to maintain the action on the court's active docket.

We conclude the district court abused its discretion by finding that good cause no longer existed by the time of the March 2019 hearing. See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018) (abuse of discretion occurs when trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence). The record does not support that Terry was not reasonably diligent in pursuing his claims in view of all the circumstances of either case. Terry was ready and willing to proceed to trial and had no objection to the court scheduling trial for August 2019. The delay from June 2017 until the hearing in March 2019 was largely attributable to the district court's decision to appoint an expert witness; therefore, it cannot be said that the delay was unexplainable or that the delay was attributable entirely to Terry. Good cause existed to not dismiss case No. A-19-417, and therefore, good cause also existed to not dismiss case No. A-19-416 for the reasons previously stated. Accordingly, we conclude the district court abused its discretion in dismissing both cases for want of prosecution and an absence of good cause.

### VI. CONCLUSION

We reverse the orders of the district court dismissing the proceedings in cases Nos. A-19-416 and A-19-417. Accordingly, we remand the cause of each action for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.